[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on January 24, 1981 in Bridgeport, Connecticut. They have resided in this state since that time. There is one minor child issue of the marriage: Gwendolyn Rose Kirkland born June 21, 1991.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter on January 2, 1998 dissolving the marriage on this ground.
The court has carefully considered the criteria set forth in CT Page 13934 §§ 46b-56, 46b-81, 46b-82 and46b-62 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for approximately 16 years. They have been separated for over a year. The minor child is six years old. The mother has a BA degree in Spanish. She speaks three languages. She attended a Bible Institute and took a Dale Carnegie Course. She hopes to start a Masters in Counseling to be able to participate more fully with her church — The Church of the Rock. Both parties are Born Again Christians. The defendant made two trips to Guatemala in connection with her church, which the plaintiff funded.
The wife worked 15 years at the Helping Hands Center. The defendant earned a high of $20,000 in 1989 and $12,836 in 1992. The defendant claims her health prevents her from working full time at this time, and further, she desires to spend time with her child who arrives home from kindergarten at 3:30 p.m. The defendant hopes to start work in January. The defendant recited a list of illnesses, none of which are life threatening — including asthma, allergies, colitis, lactose intolerance, a carpal tunnel syndrome, degenerative disc disease and irritable bowel syndrome.
Her health problems arose starting in 1993. The defendant presently takes daily and regular medication. Her health has not prevented her from her child rearing duties and basic everyday activities. The defendant is computer literate and has skills as a secretary and as a translator. She has not worked full time outside the home since 1993 or 1994. She hopes to be employed after January 1998. The defendant is not a U.S. Citizen.
In 1993 the plaintiff husband opened his own office as a personal consultant as a head hunter for Engineers and Programmers. He is presently 45 years old and in reasonably good health. The plaintiff has been successful in his business earning $169,566 in 1994, $190,363 in 1995, $111,973 in 1996 and approximately $145,000 as of November 15, 1997. He has Accounts Receivable for recent placements in the amount of $62,000 which will be paid between January and February 1998. A CPA called by the wife testified that the husband's projected income for 1998 is $175,000. The husband has an excellent opportunity for the future acquisition of income. CT Page 13935
The plaintiff by his own admission is high strung, uptight, works hard and can't relax. The defendant wife on the other hand, seemed easy going, outgoing and relaxed. The husband wrote terse letters to the wife without much trace of civility. The husband appears to be still angry claiming his wife wants his house, his child and his money.
Both parties belonged to the Church of the Rock. The wife still regularly attends. The husband had been a trustee of this church. Both parties were involved in tithing and have contributed 10% of their income to the church. Both parties want to dominate and control and unfortunately the child is in the middle of this strife. The child is presently in therapy.
Although the parties are Born Again Christians and attend the Church of the Rock, they have enrolled this child in a Roman Catholic parochial school.
The marital home is valued at $120,000 subject to a mortgage of approximately $40,000. The house contains an apartment which when rented generates income of approximately $450 to $500 per month. The wife is requesting the home, while the husband proposes that the home be sold in three or four years and the proceeds equally divided. The wife's highest earnings were $20,000 per year while the husband earned approximately $190,000 in 1995 and his prospects for 1998 look quite good. The home represents an equity of approximately $80,000. No value was put on the husband's business, as he is the business and generates the income through his placements. The defendant also has a deferred compensation fund of approximately $141,342 accumulated during the marriage.
As a Born Again Christian, the husband's religion determines that he is to be the head, the leader of his family. The plaintiff wanted an obedient and subservient wife, a role which the defendant was unwilling to continue to play.
No useful purpose would be served by a review of all the evidence presented in this trial which consumed four trial days.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the cause of the breakdown.
The following orders shall enter effective January 1, 1998. CT Page 13936
CUSTODY
The parties were at odds over the issue of sole custody vs. joint custody. Both parties love this child and each parent in their own respective way is a good parent. The child, aged six, has a good relationship with both parents. The father has had a constant and close relationship with his daughter. Although both parties like to control, the father used his control where it has affected the child adversely. When the mother asked the father to take the child on a Tuesday instead of Wednesday so that the child could be in a special program, he refused to change his day. When the mother asked him to pay for a special "computer tots" program for the minor child (cost approximately $30. per month) he refused, saying no money was available. This was a time he was tithing his church over $800 within the space of two months and earning over $100,000 per year. His notes to the defendant were bossy, terse, demanding and devoid of civility. He has allowed others to denigrate the mother in the child's presence.
Although the plaintiff attempted to control and dominate his wife through finances and because he believes he is the head and leader of the family, he indicated he would defer to his wife for final decision making involving the minor child in the event joint custody was awarded to the parties.
Both parties love their child and both parties have a need to be involved in her life and to have input with respect to the health, education, and welfare of the child.
The husband deserves to have an opportunity to see if he can reasonably and rationally discuss matters concerning the child with the defendant. After the assets are disposed of, there will be no need for posturing by either party. The court is going to grant the plaintiff husband an opportunity, a chance to show that he can communicate with the defendant so that joint custody will work for both parties and the minor child.
It is strongly suggested that both parties participate in a co-parenting course.
ORDER
1. Joint legal custody of the minor child is awarded, with CT Page 13937 primary physical residence to be with the defendant mother. The parties shall confer and discuss with each other on major issues relating to the health, education, counseling and welfare of the minor child. In the event the parties cannot agree, the defendant mother shall make the final decision.
2. The plaintiff shall pay the balance due to St. Mary's School, Derby, for the child's kindergarten year.
3. The plaintiff shall pay the cost of the "computer tots" program if the child desires to partake in this activity.
4. The child shall continue with the therapy and the parties shall share the cost of this therapy as follows: the plaintiff shall pay 2/3's and the defendant shall pay 1/3 of the cost.
5. The father shall bring the child for her scheduled events and activities when he has the minor child for visitation. The child's participation in outside activities is a part of the child's development, and necessary to the healthy growth of the child. Many of these activities will occur on a Saturday.
6. The child shall be returned to the mother after visitation with all her clothing washed and clean.
7. Neither party shall denigrate the other in the presence of the minor child, nor allow a third party to do so.
8. Each party shall have reasonable access to the child while she is with the other parent including telephone access. The father shall be entitled to make telephone contact with the minor child once per day except Wednesday. The father shall initiate the calls between 7:30 p.m. and 8:30 p.m. The child shall be free to call the plaintiff as she desires. The father shall provide the mother with his home telephone number.
9. In the event the mother intends to move and relocate out of the State of Connecticut, she shall give the father not less than 90 days notice, in writing by certified mail, of her intention to move. If the father intends to challenge the mother's right to move with the child out of state, he shall file an appropriate motion with the court not more than thirty days after the time the mother notifies the father of her move.
10. The father shall have access to information concerning CT Page 13938 the child's health and education. The father shall be entitled to receive notification of special activities that are scheduled such as school plays, programs, Parent/teacher Conferences, open house, graduation and the husband shall have the right to attend all such events.
11. The parties shall equally divide the cost of the family enrollment in the YMCA for a period of two years, so that both parties can participate in "Y" activities with the child.
12. In the event the parties decide to continue the minor child at St. Mary's School, the parties shall equally divide the cost of tuition, uniform, books and school supplies.
Visitation
The plaintiff father shall have reasonable and flexible visitation to include the following:
1. The plaintiff shall have visitation on alternate weekends commencing Friday at 4:30 p.m. with pick up at Day Care Center, to Sunday at 7:00 p.m. with drop off at the defendant's home. In the event the nextday, Monday, is a school holiday, the father shall return the minor child on Monday at 7:00 p.m. and the Tuesday overnight visitation for that week shall be canceled.
2. The father shall make reasonable efforts to bring the child to church on Sunday mornings when he has the minor child.
3. The father shall have visitation with the minor child every Tuesday from 5:15 p.m. pick up at Day Care to Wednesday at 8:45 a.m. when the father shall deliver the child to school.
4. The father shall have the minor child every Thursday from 5:15 p.m. to 8:00 p.m. for dinner. Pick up shall be at the Day Care Center and return shall be to the mother's home.
5. The mother shall have the child on Mother's Day and the father shall have the child on Father's Day. This shall supersede any other visitation schedule.
6. The father shall have the child on Christmas Day and the father shall have the Christmas week vacation. New Year's Eve Day and New Year's Day shall be alternated between the parties. The mother shall have New Year's Eve Day 1997 and the father CT Page 13939 shall have New Year's Day 1998 from 10:00 a.m. to 7:00 p.m.
In the event Christmas Day falls on a Sunday, the mother shall have Christmas Day from 9:30 a.m. to 3:00 p.m. and the father shall have the child from 3:00 p.m. on Christmas Day for the start of his Christmas week vacation.
7. The mother shall have the child on Easter Sunday to 2:00 p.m. The father shall have the child from 2:00 p.m. to 7:30 p.m.
8. The father shall be entitled to have the minor child for three weeks vacation each summer, one week of which shall not be consecutive. The father shall provide the wife with written notice by May 31st of each year as to which weeks he chooses. The mother shall be entitled to two weeks vacation each summer, consecutive or non-consecutive as she chooses.
9. The parties shall alternate yearly the child's winter and spring school vacations.
10. The Thanksgiving Day Holiday shall be alternated between the parties with the mother to have Thanksgiving Day 1998 and every other year thereafter.
11. The child's birthday shall be alternated between the parties keeping in mind the school schedule of the minor child. The father shall have the child on her birthday for 1998 until 7:00 p.m., and every other year thereafter.
12. Additional visitation and substituted dates and times shall be encouraged and facilitated and arranged by the parties.
13. All other holidays not specifically mentioned here shall be alternated between the parties.
14. The father shall advise the mother if he plans to take the child out of State on any of his visitation times.
The foregoing schedule is set forth as a guide for the parties. The times and dates should be flexible to suit the convenience of the parties and the schedule and needs of the minor child. The schedule will only work if the parties are respectful of each other and communicate in a reasonable, rational and civil manner. CT Page 13940
As the child grows older, it is contemplated that the visitation schedule will be modified to suit the needs of the parties and the minor child.
The plaintiff may be concerned that he no longer has the child Sunday overnight to Monday. The court feels it is in the best interest of the minor child at her present age, to start her school week from her main place of residence. It gives structure, stability and discipline to the minor child. It is contemplated that the child will spend additional overnights with the plaintiff as she gets older.
Both parents are encouraged to engage themselves in co-parenting counseling to better understand the needs of each other and the minor child.
REAL ESTATE
The plaintiff shall Quit Claim his interest in and to the premises located at 138 B New Haven Avenue, Derby, Connecticut in the defendant. The defendant shall be responsible for the mortgage, taxes and insurance on said premises and shall hold the plaintiff harmless therefrom. The plaintiff shall be responsible for the December 1997 mortgage, taxes and insurance payment as well as all utilities including electric, gas, water, telephone and cable which shall be paid and current as of January 1, 1998. The plaintiff shall also be responsible to pay the sewer tax on the premises.
UNALLOCATED ALIMONY AND CHILD SUPPORT
1. Commencing on January 2, 1998 and monthly thereafter in advance, the husband shall pay to the wife the sum of $3350. per month as unallocated alimony and support until the first of the following events shall occur:
 A) Wife's death; B) Husband's death; C) Wife's remarriage; D) Wife's cohabitation pursuant to statute; E) Six (6) years from the date of dissolution;
Said term of alimony shall be non-modifiable.
2. In the event of the termination of the payments provided CT Page 13941 for above during the minority of the child, the parties shall determine the amount of child support to be paid by the husband to the wife for the support of the minor child with reference to the child support guide lines and in the event the parties are unable to agree, the parties shall return to the court for a determination of the amount of child support payments. Said amount shall be retroactive to the date of the termination of alimony. Child support shall be paid until the child reaches the age of 18 years or completes the twelfth grade or attains the age of 19 whichever shall first occur.
MEDICAL COVERAGE
The plaintiff husband shall provide and maintain the medical insurance coverage he presently has in effect for the benefit of the minor child. The parties shall each be responsible for one half of all unreimbursed medical and dental expenses incurred by the minor child. Unreimbursed medical and dental expenses shall be defined as "all reasonable medical, optical, surgical, psychiatric, psychological, prescriptive drugs and orthodontic expenses."
COBRA
The wife shall have the right under COBRA to avail herself of the husband's medical insurance coverage. The husband shall pay the wife's COBRA expenses for a period of 18 months commencing January 1, 1998.
In the event the defendant obtains employment which provides medical coverage at a reasonable cost to the defendant prior to the 18 month period, then the husband's obligation to pay the COBRA expense shall terminate.
PERSONAL PROPERTY
1. The wife shall be entitled to the furniture and furnishings contained in the marital home.
2. The husband shall be entitled to the following:
 a) Husvarna chain saw; b) Blue and white china set from Husband's mother; c) Husband's books music albums d) All of the Driskell silverware sent to the CT Page 13942 husband after his grandmother's death; e) Husband's papers in basement; f) Husband's old comic books
3. The wife shall retain the weed trimmer, the Toro lawn mower, gas cans, electric hedge trimmer and the garden/yard tools. Any miscellaneous tools the wife does not need shall be turned over to the husband.
4. The 1995 Chevrolet Motor Vehicle shall be the sole property of the wife. The husband shall forthwith execute whatever documents are necessary to effectuate this order.
5. The 1995 Ford Motor Vehicle shall be the sole property of the husband. The wife shall forthwith execute whatever documents are necessary to effectuate this order.
DEFERRED COMPENSATION
As of January 2, 1998, the defendant wife shall be entitled to 30% of the plaintiff's AmEx Financial Advisors Account and 30% of the Fidelity Management Account. Said transfer shall be by means of a QDRO. There shall be no tax consequence or penalties incurred by the husband as a result of the transfer. The cost of the preparation of the appropriate QDRO's shall be the obligation of the plaintiff.
TAXES
The parties shall equally divide the 1996 Federal and State Income Tax Refund of approximately $16,416.
2. It is anticipated that the parties will file a joint Federal and State Income Tax Return for the year 1997. Any refund shall be equally divided between the parties.
3. As long as the wife is receiving unallocated alimony and child support from the husband, she shall claim the minor child as a dependent for Income tax purposes. At the time the husband's obligation to pay alimony terminates and the husband is obligated to pay child support, he shall be entitled to claim the minor child as an exemption for Federal and State tax purposes. This provision shall be modifiable.
4. The parties agree to indemnify and hold each other CT Page 13943 harmless from any liabilities for taxes, assessments, penalties or interest which may result from any joint federal/state income tax returns.
OTHER PROPERTY
The plaintiff husband shall retain exclusive ownership of his business known as Kirkland Search, free and clear of any claims by the wife.
MISCELLANEOUS
1. The plaintiff shall pay to the defendant the sum of $8880. representing one half of the Price Waterhouse Account that the plaintiff closed out. Said sum shall be paid to the defendant by January 30, 1998.
2. The plaintiff shall retain the U.G.M.A. Account which he holds for the minor child. The parties have agreed that such account shall be used for the benefit of the minor child. The plaintiff shall provide yearly statements of this account to the defendant.
DEBTS
1. The plaintiff shall reimburse the defendant her half due on the medical bills, within 30 days, as ordered Pendente Lite.
2. The plaintiff shall be responsible for the sewer repairs; car tax; telephone; and the Ansonia Vet bill incurred as of December 15, 1997.
3. Each party shall be solely responsible for the debts listed on their Financial Affidavits unless otherwise disposed of herein.
EXPERT FEES
The defendant is awarded experts' fees in the amount of $3000 to be paid by the plaintiff to the defendant as a contribution toward the fees of the expert. The defendant shall pay said amount within 60 days of date.
COUNSEL FEES
CT Page 13944
The defendant is awarded Counsel fees in the amount of $3000 to be paid by the plaintiff within 30 days of January 2, 1998.
LIFE INSURANCE
The plaintiff shall maintain his Life Insurance policy in the amount of $200,000 and he shall name the defendant as the irrevocable beneficiary thereon for so long as the plaintiff has an obligation for alimony and/or child support. This provision shall be modifiable.
Coppeto, J.